Trevaskis' Estate.

Argued October 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John H. Bigelow,* with him *Bertram H. Kenyon* and *Reed, Smith, Shaw & McClay,* for appellant.

*Horace J. Thomas, Sr.,* with him *J. Weinman Cratty,* for appellee.

OPINION BY MR. JUSTICE LINN, November 23, 1942:
This appeal complains of an order directing the Register of Wills to admit to probate as the last will

and testament of A. L. Trevaskis, three papers, one executed in the spring of 1934 and designated as the second will; one, dated December 12, 1934, designated as the third will; and one, dated November 16, 1938, designated as the sixth will; numbers 3 and 6 being codicils to number 2. The appellants contend that another will, executed in 1938, known in the record as the fifth will, should have been probated to the exclusion of the second and third.

The Register of Wills certified the probate proceedings to the Orphans' Court.* Six testamentary papers were found after testator's death. The parties agreed that the first and fourth were revoked. The fifth will is the center of controversy.

Testator resided in the Borough of Turtle Creek, Allegheny County, Pennsylvania. He died on October 28, 1940, aged eighty. For ten years prior to his death he had been in the habit of spending the winter and spring months in Florida. During his absence there in 1936, a flood occurred in Turtle Creek raising the water some distance over the floor of testator's office. After the flood receded, his brother, Charles R. Trevaskis, opened testator's safe and dried such of the documentary contents, "possibly twenty or twenty-five different papers," as had been affected by the water and also took out of it an envelope marked "My Will" which had not been damaged by the water; he stated that he did not open the envelope. He also testified that after testator returned from Florida in June of 1936, he gave testator the envelope marked "My Will" and the other documents which he had taken from the safe. He was asked when he first saw the third will and replied that he first saw it the day before or the day testator died when he found it in testator's bedroom "in a sealed envelope."

In the spring of 1938, while in Florida, the testator wrote and executed the fifth will on which appellant relies. Omitting date and signatures, an exact copy is

---

* See Act of June 7, 1917, P.L. 415, section 19, 20 PS section 1982.

as follows: "ᵀ⁄ₓ I A. L. Trevaskis Having made my third will and they were lost in the Flood at my office I here make this My last l̶a̶s̶t̶ will and testimony If they cannot be found I will My home at Turtle Creek Allegheny County to my sister (Grace H. Trevaskis my Sister) and the other Properties to be sold and the money to be shared alike to my sisters and B̶r̶ Brothers share and share alike. Living or dead If dead Divide it equally among their children My funeral and other expens to be paid First"

When he made this will, both the second and third, which were ordered for probate, were in existence, though at the time he seems to have been uncertain concerning that fact. While he said "they were lost in the Flood," he did not use the word "lost" in the sense of gone forever, but in the sense of disappearance that might be temporary; he thought "they" might be found, because he specified disposition of property to be effective "If they cannot be found." The use of the word "will" in the singular with the plural "they" in the same sentence may be reconciled by assuming that testator knew that the word "will" may be used to include will and codicil.

In the fourth will he refers to a prior will not as "lost in the Flood," but as one which "cannot be found since the flood." This was offered in evidence, as counsel for appellant stated, "Because it is part of the history of the case . . . Although not for the purpose of establishing it as a will." It was made in Florida, February 7, 1937, and omitting signature, is as follows: "Being of sound mind make this my last will and Testimony. Having made made a will which cannot be found.

"I will my Home in Turtle Creek Allegheny County which ₁̶ cannot be found since the flood I now will to my sister Grace H. Trevaskis and the balance all of my property to be sold There within two years and divided equally among the Eleven Brothers and sisters families share and share alike In case they find My previous

will signed by Me It will be lawful and discard this and The old will be Lawful"

The controversy results from the contingency expressed in the fifth will. In *Case of Todd's Will*, 2 W. & S. 145, 146, Chief Justice Gibson said ". . . that a paper subject to a condition ought not to be admitted to probate after failure of the contingency on the happening of which it was to have taken effect." Also, see *Morrow's Appeal*, 116 Pa. 440, 9 A. 660; *Forquer's Estate*, 216 Pa. 331, 66 A. 92; *Moore's Estate*, 332 Pa. 257, 2 A.2d 761.

The learned court below concluded that the wills which had been lost were found and, accordingly, that the contingency on which the fifth will should become effective, had failed. The evidence, which has been referred to, supports the findings. Something is said in the argument about the burden of proof. As the evidence is in the record, it is immaterial who put it in; the question is whether it supports the findings on which the order was based. We have no doubt on that point.

Order affirmed; costs to be paid by appellant.